**HSU, Appellant,**

v.

**PARKER; Ohlin, Appellee.**

[Cite as *Hsu v. Parker* (1996), 116 Ohio App.3d 629.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 95–T–5375.

Decided Dec. 16, 1996.

630

*Robert S. Meermans,* for appellant.

*James R. Scher,* for appellee.

JOSEPH E. MAHONEY, Judge.

In this accelerated calendar appeal, submitted to this court upon the record and briefs of the parties, plaintiff-appellant, Wi I. Hsu, M.D., appeals from the judgment of the Warren Municipal Court, Civil Division, in favor of defendant-appellee, Joseph D. Ohlin. For the reasons that follow, we reverse the judgment of the trial court and remand this case for the trial court to enter judgment for appellant and assess costs.

The facts pertinent to this appeal are not in dispute. On October 21, 1991, defendant, Elaine Parker, was involved in an automobile accident and suffered multiple injuries. In February 1992, Parker sought treatment from appellant for her injuries related to the accident. Prior to consulting appellant, Parker had retained the services of appellee, an attorney, to assist her in pursuing a personal injury action against the party responsible for her injuries.

On February 12, 1992, Parker executed a document entitled "Security Agreement for Medical Services," which granted appellant a security interest in any and all proceeds from Parker's pending personal injury action. The document authorized appellant to furnish appellee with complete reports of appellant's examinations, diagnoses, treatment, and prognosis of Parker in regard to the motor vehicle accident. The document further authorized her attorney, appellee, to withhold sufficient funds from any settlement, judgment, or verdict as may be due appellant for his services to Parker, and directed appellee to pay such funds to appellant. Appellee signed the document acknowledging receipt.

On or about March 3, 1992, appellant performed surgery on Parker's right knee. Parker also received additional treatment for her injuries and made additional visits to appellant's office. Pursuant to the February 12, 1992 security agreement, appellant furnished the reports of Parker's visits to appellee. The fee for appellant's services to Parker, totaling $1,446, has not been paid.

On June 4, 1992, Parker's personal injury action was settled for $25,000. Parker instructed appellee to transfer the settlement proceeds to her and not to pay appellant's medical fees. Appellee, citing an ethical obligation to his client, did not pay appellant for his services.

On January 14, 1994, appellant filed a complaint against Parker and appellee, alleging that they owed him $1,446 for medical services rendered to Parker. Parker failed to answer appellant's complaint, and the Warren Municipal Court entered a default judgment against her.

Pursuant to Civ.R. 53, appellant's action against appellee, Ohlin, was submitted to a referee. Before the referee, appellant argued that the "Security Agreement

for Medical Services" operated as an equitable assignment of any settlement proceeds from Parker to appellant. Appellee argued that, as an attorney, his duty was to follow his client's instructions concerning the transfer of the settlement proceeds. On February 22, 1995, the referee filed a report recommending judgment in favor of appellant and against appellee.

Appellee filed a timely objection to the referee's report and, on November 20, 1995, the trial court rejected the referee's recommendation and entered judgment in favor of appellee. Although acknowledging that portions of the "Security Agreement for Medical Services" (directing appellee to pay appellant out of any proceeds recovered from the personal injury action) would "appear to create an assignment," the trial court held that the remainder of the document was ambiguously drafted. Construing ambiguities in favor of appellee, the court determined that the document established an equitable lien against any monies recovered from the personal injury action and that, until appellant took some action to enforce his lien upon the proceeds, appellee was obligated to follow the instructions of his client.

From this judgment, appellant has filed a timely appeal. In his sole assignment of error, appellant asserts that the trial court erred in disregarding the recommendation of the referee when it determined that a valid assignment had not been created between Parker and appellant by the security agreement executed on February 12, 1992. We agree.

An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration. *Christmas' Estate v. Griswold* (1858), 8 Ohio St. 558, 563–564; Black's Law Dictionary (6 Ed.1990) 119. No particular words are required to create an assignment. Rather, "[a]ny word or transaction which shows an intention on the one side to assign and on the other to receive, if there is a valuable consideration, will operate [to create an assignment]." *Grogan Chrysler–Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 96, 13 O.O.3d 154, 157, 392 N.E.2d 1283, 1286; see, also, 4 Corbin on Contracts (1951) 528, Section 879.

The trial court, although acknowledging that portions of the security agreement would "appear to create an assignment," concluded that the parties created a mere security interest and that no assignment was created. The trial court based this decision on our opinion in *Fabrizio v. Hendricks* (1995), 100 Ohio App.3d 352, 654 N.E.2d 127, which required that "*if* there is any doubt or ambiguity *in the language of a contract it will be construed strictly against the party who prepared it.*" *(Emphasis added.)* Id. at 356, 654 N.E.2d at 130. *In the case* sub judice, *there is no evidence of ambiguity in the security agreement. While the document did create a security interest in any proceeds recovered as a*

*result of the personal injury lawsuit, the document also clearly authorized Parker's attorney, appellee, to withhold funds from the settlement to pay appellant for his services. Furthermore, the document explicitly directed appellee to pay, from any settlement or award, medical fees owed by Parker to appellant. The trial court interpreted the provisions for a security agreement and for an assignment as being in conflict where no such conflict existed. It is clear from the document that the parties intended a security interest as well as an assignment, and we see no valid reason why both provisions cannot exist in the same document. Furthermore, the actions of the parties reinforced their intentions. Appellant provided his medical services, including an operation on Parker's right knee and numerous office visits, only after the document had been executed.*

We also reject appellee's argument that Parker's instruction not to pay appellant from the proceeds of the settlement gave rise to an ethical obligation to follow Parker's most recent instruction pertaining to the disbursement of the funds to appellant. Appellee cites DR 9–102(B)(4) for this proposition. That rule states that a lawyer shall "[p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client *is entitled to receive*." (Emphasis added.) Based on our ruling that a valid assignment had occurred, the client was not entitled to receive the full amount of the settlement. "After notice of the assignment has been given to the obligor, or knowledge thereof received by him in any manner, the assignor has no remaining power of release. The obligor must pay the assignee." 4 Corbin on Contracts (1951) 577–578, Section 890. From the language of the security agreement, Parker assigned part of the proceeds of her personal injury action to appellant. As shown by appellee's signature on this document, appellee had knowledge of the assignment. Consequently, appellee was obligated to pay appellant for medical services appellant provided to Parker from any settlement reached in the personal injury action. When a dispute arose over who was entitled to the $1,446 from the settlement proceeds, appellee, to avoid paying the wrong party, should have filed a complaint in interpleader. Thus, a court of competent jurisdiction could have resolved any conflict which existed as a result of Parker's initial instructions and subsequent instructions to appellee.

Appellant's sole assignment of error has merit.

Based on the foregoing, we reverse the judgment of the trial court and remand this case for the trial court to enter judgment for appellant and assess costs.

*Judgment reversed*
*and cause remanded.*

NADER and CACIOPPO, JJ., concur.

Mary Cacioppo, J., retired, of the Ninth Appellate District, sitting by assignment.