[Cite as *Blue Ash Auto Body, Inc. v. Grange Property & Cas. Ins. Co.*, 2022-Ohio-4599.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| BLUE ASH AUTO BODY, INC., | : | APPEAL NO. C-220165 |
|  |  | TRIAL NO. A-2003832 |
| Plaintiff-Appellant, | : |  |
|  | : | *O P I N I O N.* |
| vs. | : |  |
|  | : |  |
| GRANGE PROPERTY & CASUALTY INSURANCE COMPANY, | : |  |
| Defendant-Appellee. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 21, 2022

*Dennis A. Becker*, for Plaintiff-Appellant,

*Gallagher, Gams, Tallan, Barnes & Littrell, L.L.P.,* and *Mitchell M. Tallan,* for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}   Plaintiff-appellant Blue Ash Auto Body, Inc., ("Blue Ash") appeals from the judgment of the Hamilton County Court of Common Pleas granting summary judgment on its breach-of-contract and unjust-enrichment claims in favor of defendant-appellee Grange Property & Casualty Insurance Company ("Grange"). Because we agree that Grange is entitled to summary judgment on both claims, we affirm the judgment of the trial court.

### *Factual and Procedural Background*

{¶2}   Blue Ash is an auto body shop in Hamilton County, Ohio.  Grange is an automobile insurer.   In October 2020, Blue Ash filed a complaint against Grange in the Hamilton County Court of Common Pleas, bringing claims for breach of contract and unjust enrichment.  In March 2021, Grange filed a motion for summary judgment on all claims.  In March 2022, the court granted summary judgment in favor of Grange.

{¶3}   Blue Ash alleges that Grange owed it $18,447.98 for repairs made to approximately 14 vehicles owned by Grange insureds.  Essentially, Blue Ash contends that the reasonable cost of repairs exceeded the amount that Grange agreed to pay for each customer.  In exchange for excusing those customers from personally covering the shortfall, Blue Ash released the vehicles to the customers and obtained an "Assignment of Proceeds" from each insured that provided, in relevant part:

> In exchange for excusing me from making immediate full payment for repairs to my Vehicle and/or releasing a possessory lien that Repair Facility has or may have the right to assert, I hereby assign any claim and/or proceeds that have accrued or may accrue under my insurance contract or that I may have and/or be entitled to obtain from the person

2

at-fault in the accident relating to _____ for the amount

Repair Facility, in the exercise of professional judgment, deemed

necessary and proper to repair my Vehicle including repair costs, labor,

parts, towing, parking, storage, garage insurance allocation, parts,

labor, and/or administrative charges.

\* \* \*

I expressly understand that my execution of this agreement may result

in Repair Facility suing my insurance company and I knowingly

authorize that act.

{¶4}     In its motion for summary judgment, Grange did not dispute that Blue Ash performed the work, but it did dispute that the "reasonable amount owed" under each insurance policy was equivalent to the amount Blue Ash charged each customer. Grange also noted that its policies contain an anti-assignment provision, and that it never gave its consent for the purported assignment.   Grange highlighted the limitation of liability, cooperation, and anti-assignment provisions included in each customer's policy, which read:

A.  **Our** limit of liability for the loss will be the lesser of the:

    1.  Actual cash value of the stolen or damaged property, reduced by the salvage value if you or the owner retain the salvage; or

    2.  Amount necessary to repair or replace the property using parts from the vehicle's manufacturers or parts from other manufacturers;

\* \* \*

B. A person seeking any coverage must:

    1.  Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

\* \* \*

### A. **Assignment/Transfer of Your Interest in This Policy**

> **Your** interest, rights or duties under this policy may not be assigned or transferred without our written consent.

(Emphasis sic.)

{¶5}  Grange argued that summary judgment should be granted on both claims given the anti-assignment provision in the policies, and because there was no benefit conferred upon Grange.

{¶6}  A hearing on the motion was held on January 28, 2022.  On March 25, 2022, the court granted summary judgment on all claims in favor of Grange.  In its entry, the court held that the breach-of-contract claim failed because the "assignment is in direct contradiction to the anti-assignment provision in Defendant's policies and [is] therefore unenforceable."  As to the unjust-enrichment claim, the court held that it also failed because the benefit conferred was entirely upon the vehicle owners, and not Grange.

{¶7}  In two assignments of error, Blue Ash challenges the trial court's judgment on both claims.

### *Breach of Contract*

{¶8}  An appellate court reviews a trial court's ruling on a motion for summary judgment de novo.  *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 12, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  "Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Helton* at ¶ 12; Civ.R. 56.

{¶9} While the moving party "bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of any genuine issues of material fact," the nonmoving party then bears the "reciprocal burden to set forth specific evidentiary facts showing the existence of a genuine issue for trial." *Blue Ash Auto Body, Inc. v. Frank*, 2022-Ohio-1292, 190 N.E.3d 1180, ¶ 10 (1st Dist.).

{¶10} A breach-of-contract claim requires the plaintiff to establish (1) the existence of a contract, (2) a breach of that contract, and (3) damages resulting from that breach. *Gilman v. Physna, LLC,* 1st Dist. Hamilton No. C-200457, 2021-Ohio-3575, ¶ 17.

{¶11} This case comes down to the first element: whether a contract existed between the parties. Grange contends that the anti-assignment provision in its policies invalidates any assignment taken by Blue Ash, and thus no contract existed. Blue Ash contends that the anti-assignment provision does not apply, because rather than having an interest in the policy, it has an assignment of a "chose in action."

{¶12} An insurance policy is a contract between the insurer and the insured. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d 482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 23. A "chose in action," has been defined as "the right to bring an action in tort and in contract." *Id.* at ¶ 20. Generally, "all contract rights may be assigned, except under three conditions":

(1) "if there is clear contractual language prohibiting assignment, an assignment will not be enforced."

(2) "an assignment must not materially change the duty of the obligor, materially increase the insurer's burden or risk under the contract,

5

materially impair the insurer's chance of securing a return on performance, or materially reduce the contract's value"

(3) "the assignment will not be valid if it is forbidden by statute or by public policy."

(Citations omitted.) *Id.* at ¶ 36.

{¶13} In *Pilkington,* the Ohio Supreme Court held that "[i]nsurance policies are generally construed such that assignment of an interest is valid after the occurrence of the loss insured against, and the assignment is then regarded as a transfer of the chose in action, even in the face of an anti-assignment provision." *Id.* at ¶ 40. Essentially, the court reasoned that because the loss was fixed at the time it occurred, the assignment was valid despite the anti-assignment provision. *Id.* at ¶ 40-43 (holding that the duty to indemnify in a commercial general liability policy was assignable as a chose in action where covered losses were fixed at the time of the occurrence).

{¶14} In a later case, the Ohio Supreme Court explained that "[a] person may not assign the right to the future proceeds of a settlement if the right to the proceeds does not exist at the time of the assignment." *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, ¶ 26. Importantly, the court noted that allowing such assignments could promote litigation and discourage settlement because the assignee "expects full payment and lacks interest in negotiating the amount of the debt," and because "the third-party insurer lacks the ability to dispute the amount or reasonableness of the charges." *Id.* at ¶ 22. The court warned that "[u]pholding the legality of such assignments opens the door for other creditors to seek debt protection through assignments: the pharmacy, the automobile repair

6

shop, other medical providers." *Id.* at ¶ 24; *see Frank*, 2022-Ohio-1292, 190 N.E.3d 1180, at ¶ 14-18 (discussing the public policy concerns raised in *West Broad*).

{¶15} The Southern District of Ohio applied both *Pilkington* and *West Broad* to a case involving a similar assignment made by State Farm insureds to Blue Ash. *See Blue Ash Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co.,* S.D.Ohio No. 1:20-cv-393, 2021 U.S. Dist. LEXIS 44354 (Mar. 10, 2021), *aff'd,* 6th Cir. No. 21-3365, 2021 U.S. App. LEXIS 36105 (Dec. 3, 2021). Like the case at bar, in *State Farm*, Blue Ash obtained an assignment of proceeds for customers insured by State Farm, and sought to collect on its cost of repairs, despite exceeding the amount that State Farm agreed to pay on behalf of its insureds. *Id.* at 2. State Farm's policies contained similar anti-assignment language. *Id.* at 2-3, 5. The court held that the assignment was invalid because it implicated all three *Pilkington* conditions. *Id.* at 8. Accordingly, the court granted summary judgment to State Farm on the breach-of-contract claim. *Id.*

{¶16} Our analysis of the *Pilkington* conditions yields the same result. First, the language of the Grange policies is unambiguous. It states, "Your interest, rights or duties under this policy may not be assigned or transferred without our written consent." Grange did not give its consent.

{¶17} Second, if given effect, the assignment would materially change Grange's obligations under the policies. Grange would effectively be at the mercy of whatever amount Blue Ash determined was necessary to repair the vehicles. "While the insureds have a general right to contest a coverage estimate from [the insurer], the right to negotiate is markedly different than a third party's demand for payment in full." *Mercedes-Benz of W. Chester v. Am. Family Ins.*, 12th Dist. Butler Nos.

CA2009-09-244, CA2009-09-245 and CA2009-09-246, 2010-Ohio-2307, ¶ 20 (affirming grant of summary judgment in favor of insurer and holding that because "the anti-assignment clause is valid under *Pilkington* and comports with public policy according to *West Broad*, the [anti-assignment] clause invalidates the insureds' attempt to assign their contractual rights to [the body shop.]"); s*ee Blue Ash Auto Body, Inc. v. State Farm Mut. Auto. Ins. Co.,* S.D. Ohio No. 1:20-cv-393, 2021 U.S. Dist. LEXIS 44354, at 8 ("Second, allowing Blue Ash to collect from State Farm materially changes State Farm's obligations under the policy with the Customers.").

{¶18} Finally, the assignment is contrary to public policy as it would promote litigation because Grange's only method of contesting a demand for payment would be through litigation. *See State Farm* at 8 ("Third, the assignment is against public policy - State Farm would have no means, as the third-party insurer, to dispute the amount or reasonableness of Blue Ash's charges."); *Mercedes-Benz* at ¶ 23 ("Assigning the right to seek proceeds to [the body shop], therefore, increases the likelihood of litigation rather than relying on any negotiation settlement the insureds could have achieved with their insurer."); *W. Broad Chiropractic,* 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, at ¶ 22-23 (discussing public policy concerns that arise with similar assignments).

{¶19} Because we hold that the assignment was invalid, the trial court properly granted summary judgment in favor of Grange on the breach-of-contract claim. The first assignment of error is overruled.

### *Unjust Enrichment*

{¶20} In Blue Ash's second assignment of error, it argues that it has a valid claim for unjust enrichment. Grange contends that the claim fails because Blue Ash did not confer a benefit upon it. We agree.

{¶21} To establish a claim for unjust enrichment, a plaintiff must show that: (1) they conferred a benefit upon the defendant; (2) the defendant had knowledge of the benefit; and (3) retention of the benefit would be unjust under the circumstances. *Helton*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, at ¶ 25.

{¶22} In *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1462, 81 N.E.3d 499 (10th Dist.), the Tenth District faced a similar scenario to the case at hand in which a body shop completed work for customers and sent the insurer an agreement that purportedly obligated the insurer to reimburse the body shop for all charges. *Id.* at ¶ 3. The insurer underpaid, the body shop alleged unjust enrichment, and the trial court granted judgment on the pleadings in favor of the insurer. *Id.* at ¶ 4. On appeal, the court held that while the repairs restored the vehicles to their pre-accident condition, the connection between the body shop and the insurer "is too indirect to constitute a 'benefit conferred' for purposes of a common law claim of unjust enrichment." *Id.* at ¶ 27. Thus, the court held that dismissal of the body shop's claims was proper. *Id.*; *see State Farm,* S.D. Ohio No. 1:20-cv-393, 2021 U.S. Dist. LEXIS 44354, at 9, quoting *Three-C* at ¶ 27 ("Blue Ash's claim that the benefit to the Customer benefitted [the insurer] is 'too indirect to constitute a benefit conferred' for the purposes of unjust enrichment.").

{¶23} Blue Ash again asserts that the benefit conferred upon Grange is "the benefit of repairs being completed to satisfy the insurer's obligations to insureds."

9

Other than this statement, Blue Ash has not put forth any facts to demonstrate that it conferred a benefit upon Grange. Rather, Blue Ash voluntarily performed the work, and voluntarily released the vehicles to the insureds before receiving full payment. Such a benefit is too indirect to constitute a benefit conferred upon Grange.

{¶24} For these reasons, we hold that the trial court properly granted summary judgment in favor of Grange on Blue Ash's unjust-enrichment claim. The second assignment of error is overruled.

### *Conclusion*

{¶25} In light of the foregoing analysis, we overrule Blue Ash's first and second assignments of error, and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.